ROCHESTER BREWING COMPANY *vs.* LAWRENCE J. KILLIAN.

Suffolk. January 8, 1901. — May 24, 1901.

Present: HOLMES, C. J., KNOWLTON, MORTON, BARKER, & LORING, JJ.

*Contract,* Construction. *Evidence,* Materiality.

A letter, in which a retail liquor dealer asked a brewing company to erect on the building occupied by him a sign stating it to be the headquarters for the sale of the brewing company's beer, contained the following: "It is, of course, understood that I draw no other domestic lager beer than that brewed by the Rochester Brewing Co. during the period of my present license. I also understand that this sign, as well as all other signs placed on or in the building occupied by me, advertising Rochester beer, remain the property of your company and can be removed by you or them at any time which you may elect. Should you find it necessary at any time, by reason of my not drawing your beer, to remove the special board sign in question, and should objections of any kind be raised by the owners of the building to having said sign torn down, I hereby agree to reimburse you or your company to the amount of the cost of the labor and lumber required in the building of such a sign, and hereby grant you the privilege to obliterate the sign matter by repainting." A postscript added "In reference to my reimbursing your company for the labor and lumber used in the within mentioned sign, I mean to convey the idea that *only* in case I should use the board for

new sign or advertising purposes, that you are then to be reimbursed to the extent of its cost as above stated." The sign having been erected, the dealer, after the expiration of his license for that year, ceased to sell Rochester beer and used the signboard to advertise the beer of another company. *Held*, that the dealer's promise to reimburse the brewing company for the cost of the sign was not contingent on his ceasing to sell their beer within the period of his then existing license, and that the labor mentioned was not limited to the labor of carpenters. *Held, also,* that in an action against the dealer on his promise, evidence offered by him, to show that the sign was of benefit to the brewing company and not to him and that the cost of the sign had been charged off by the company on its account books, rightly was excluded as immaterial.

CONTRACT to recover the cost of lumber and labor required in the building of a board sign for advertising purposes, furnished by the plaintiff under a written contract. Writ dated July 25, 1899.

At the trial in the Superior Court, before *Hopkins*, J., it appeared, that the defendant was a retail dealer in liquors, and occupied a building on the corner of Columbus Avenue, Church and Tennyson Streets, in Boston, having a lease of the entire building, and it was on the roof of the building that the sign in question was erected. A letter of the defendant containing the alleged contract was put in evidence and read as follows :

" June 23, 1896. W. B. Holloway, Manager, Rochester Brewing Co. Dear Sir, — Believing it to our mutual advantage that a large display sign be erected on top of building now occupied by me, to read ' Headquarters for Rochester Brewing Co.'s Lager Beer,' with this end in view I have been granted permission by the owners of the building to have such a sign erected, and would request that you have a tight board sign placed on roof of building, showing the four sides, to stand erect about fifteen feet, reading as stated above. It is, of course, understood that I draw no other domestic lager beer than that brewed by the Rochester Brewing Co. during the period of my present license. I also understand that this sign, as well as all other signs placed on or in the building occupied by me under the firm name of L. J. Killian & Co., advertising Rochester beer, remain the property of your company and can be removed by you or them at any time which you may elect. Should you find it necessary at any time, by reason of my not drawing your beer, to remove the special board sign in question and should objections of any kind be raised by the owners of the building to

having said sign torn down, I hereby agree to reimburse you or your company to the amount of the cost of the labor and lumber required in the building of such a sign, and hereby grant you the privilege to obliterate the sign matter by repainting. I would thank you to give this matter your immediate attention. Respectfully, L. J. Killian.

" P. S.   In reference to my reimbursing your company for the labor and lumber used in the within mentioned sign, I mean to convey the idea that *only* in case I should use the board for new sign or advertising purposes, that you are then to be reimbursed to the extent of its cost as above stated.   L. J. Killian."

There was evidence for the plaintiff that it provided a sign of the kind stipulated for in the written contract, and paid for the complete sign, including the paint, $365 ; that subsequently in May, 1899, the defendant, being still the lessee of the entire building, but not the occupant of the whole, ceased to purchase beer brewed by the plaintiff company, and began to purchase other beer made by the Harvard Brewing Company, and that some time before the date of the writ the original advertisement on the sign was obliterated and words advertising the Harvard Company's beer were substituted.

The defendant, called as a witness by the plaintiff, testified in substance as follows : That he was the lessee of a building on the corner of Columbus Avenue, Church and Tennyson Streets, upon which the sign in question was erected ; that he made arrangements for the sign through one Holloway, who was, at the date of the contract in question, the Boston manager for the plaintiff company ; that he signed the contract in suit ; that the sign in question was erected on three sides of the building, and that subsequently, during his absence in Europe, between May 31 and July 1, 1899, the words originally on the sign were obliterated and the advertisement of the Harvard Company's beer was painted on ; that the Harvard Brewing Company's beer is not the Rochester beer ; that during his absence in Europe his brother, Thomas Killian, acted as his agent and representative; that he never had permission from the plaintiff to change the advertisement ; that on May 31, 1899, when leaving for Europe, he had not exactly severed his relations with the plaintiff, but had made arrangements to take Harvard beer and expected to

cease to use the Rochester beer; that he ceased to buy beer from the Rochester Brewing Company about the 27th or 28th of May, but did not stop using it then as he had quite a lot on hand; that at the same time he began buying Harvard beer, and had continued using Harvard beer down to the present time; that on the day he left for Europe he had a conversation over the telephone with one Albrecht on behalf of the plaintiff company, in which Albrecht requested that the plaintiff be allowed to take its signs, but the defendant told him he was going away, and asked him to let the matter remain until he returned on the first of July, to which Albrecht agreed; that the defendant had no conversation with Albrecht since his coming home; that the first he knew of the new advertisement was seeing the sign from the street when he came back; that he then saw his brother and had a talk with him about it; and that he thought he could do anything about the sign he saw fit.

Holloway, called as a witness by the plaintiff, testified on cross-examination, that the sign in question was placed there to advertise the beer of the Rochester Brewing Company. He was then asked the following question by the defendant's counsel: "And it was considered then, was it not, as being a place of value as an advertising place?"

This was objected to and excluded by the judge, and the defendant's counsel excepted to the exclusion. This evidence was offered to show that the sign was for the benefit of the plaintiff, and was of no benefit to the defendant whatever, and that it was a valuable space for advertising purposes.

At the conclusion of the evidence, the defendant offered to prove, by the witness Holloway, that at the end of the fiscal year of 1896, which was the month of September of that year, the cost of the sign in question was charged off on the plaintiff's books, and that it was no longer considered an asset of the company. This testimony was excluded, and the defendant excepted.

The defendant requested the judge to rule that the question as to whether or not the conditions of the contract were broken by the defendant and complied with by the plaintiff to an extent that would allow the plaintiff to recover, should be left to the jury, and further asked the court to make the following rulings: 1st. That this contract expired the first day of May, 1897, the

license year mentioned therein.    2d.   That the plaintiff can re-cover in this suit only for a breach of the contract during that year.    3d.   That the sign in question, by the terms of the con-tract, became on May 1, 1897, the property of the defendant. 4th.   That the defendant, if liable at all, is liable only for the cost of the carpenter's labor and the lumber used in the erection of the sign.

The judge refused to give any of these rulings, but in reference to the fourth request instructed the jury that the plaintiff, if en-titled to recover, could recover for the cost of the complete sign, less the cost of the paint stock.    The defendant's counsel ex-cepted to this refusal and instruction.

The jury returned a verdict for the plaintiff in the sum of $341.25 ; and the defendant alleged exceptions.

*J. F. Sweeney,* for the defendant, submitted the case on a brief.

*G. L. Wilson,* for the plaintiff.

BARKER, J.   The principal question is upon the construction of the defendant's letter in which he agreed under certain cir-cumstances to reimburse the plaintiff to the amount of the cost of the labor and lumber required in the building of such a sign as that which his letter requested to have placed on the roof. The letter was dated June 23, 1896.   One sentence in it says, " It is, of course, understood that I draw no other domestic lager beer than that brewed by the Rochester Brewing Co. during the period of my present license."   The defendant contends that this sentence controls the whole contract, and that he was not bound to reimburse the plaintiff unless he ceased to draw the plaintiff's beer during the life of his license, which would of course expire at the end of the next April.   But unlike the hiring for a year in *Hopedale Machine Co.* v. *Entwistle,* 133 Mass. 443, on which the defendant relies, the understanding spoken of in the sentence was not initiated by the letter, and was not the subject of the contract as to the sign.   The reference to it is merely incidental, and the language of the whole letter shows that the agreement proposed was not limited to the period of the license.    The defendant did not say " If I break my agreement I will reimburse you," and did say that the plaintiff could re-move the sign at any time, and that he would reimburse the plaintiff if at any time, by reason of his not drawing the plain-

tiff's beer, the latter should find it necessary to remove the sign. This language looks to the time to which the understanding then in force did not reach, as well as to that which the understanding covered. Nor is the labor mentioned in the proposal limited to the labor of carpenters, as the defendant contends in his fourth request.

The only other exceptions argued upon the defendant's brief except those relating to the construction of his letter, are to the exclusion of evidence offered by him to show that the sign was of benefit to the plaintiff and of no benefit to the defendant, and of evidence offered by him to show that in September, 1896, the cost of the sign was charged off by the plaintiff upon its account books. These matters were immaterial.

*Exceptions overruled.*